**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DEVON A.,
AKA DEVON L. J. A.

Plaintiff,

v. No. 1:19-CV-473 DHU/KRS

FRANK BISIGNANO,
Commissioner of the Social Security Administration,

Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on the Social Security Administrative Record, (Doc. 43), filed March 4, 2025, in support of Plaintiff Devon A.'s ("Plaintiff") Complaint (Doc. 1) seeking review of the decision of Defendant Frank Bisignano, the Commissioner of the Social Security Administration (the "Commissioner" or "Defendant") denying Plaintiff's claims for disability insurance benefits ("DIB") or supplemental security income ("SSI") under Title II or Title XVI of the Social Security Act, respectively. On June 4, 2025, Plaintiff filed her Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (the "Motion") on June 4, 2025. (Doc. 48). The Commissioner filed a Brief in Response on July 21, 2025, (Doc. 52), and Plaintiff filed a Reply on August 4, 2025. (Doc. 53). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). Having meticulously reviewed the entire record and being fully advised in the premises, the Court concludes that the Administrative Law Judge erred in his decision and will therefore **GRANT** Plaintiff's Motion and remand this case back to the Social Security Administration for proceedings consistent with this opinion.

## I. BACKGROUND AND PROCEDURAL POSTURE

This is Plaintiff's third appeal to this Court following the denial of disability claims.[1] Plaintiff filed an initial application for DIB on October 5, 2012, and SSI on February 12, 2013, with an alleged onset date of February 12, 2013, at 33 years of age. (*See* Administrative Record ("AR") at 127-29, 927).[2] Plaintiff alleged she was disabled due to "anxiety related disorder" and "substance addition disorder (drug)."3 (AR at 127-29, 927). At the initial level, Plaintiff expanded her disability allegations claiming she suffered from Post Traumatic Stress Disorder ("PTSD"), chronic pain in her back, neck, and arms, high blood pressure, and high cholesterol. (*Id.* at 129). Plaintiff has a ninth-grade education, (AR 51), and prior to her alleged onset disability she was employed as a banker, main banker, and a "rejected items clerk." (AR 50-54, 115, 336, 605, 1126-28). After her alleged onset disability, Plaintiff sporadically worked part-time as a self-employed babysitter and house cleaner in 2013, 2014, and 2017. (AR at 54-55). Plaintiff also reported wage earnings in 2015, 2019, and 2022. (AR at 1353).

After Administrative Law Judge Eric Weiss ("ALJ Weiss") denied Plaintiff's initial claims on September 11, 2017, (AR 103-117), Plaintiff untimely appealed to the Appeals Counsel, which was denied on March 22, 2019. (AR 93-96). On May 22, 2019, Plaintiff filed a *pro se* Complaint to this Court on the grounds that her appeal was untimely due to a severe car accident prior to her appeal deadline. (AR at 1014-44). The Commissioner subsequently stipulated to remand for further proceedings, which Magistrate Judge Kirtan Khalsa ordered on September 5, 2019. (AR

1 Plaintiff appeared *pro se* in all proceedings and appeals until retaining her current counsel, Laura J. Johnson of Armstrong Johnson Law, LLC, on February 3, 2023. (AR 1272-75, 1277).
2 Document 43 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.
3 The Court notes that the ALJ and the parties reference Plaintiff's history of drug use, including withdrawals, that may have affected Plaintiff's presentation during at least one medical examination. (*See* AR at 130-37, 158, 172, 930, 933-35, 937-39, 1127-28, 2527); *see also* (Doc. 48 at 1; Doc. 52 at 2). Nonexamining consultants, however, found Plaintiff's prior substance use was not material in the disability evaluation. *See generally* (AR at 129-86). The record also establishes that Plaintiff received methadone treatment and a New Mexico medical cannabis card for anxiety and appetite. (AR at 445, 762, 888, 1443-44).

1045, 1047).

After a second hearing, ALJ Weiss denied Plaintiff's DIB and SSI claims on September 2, 2021. (AR 1055-72). Once again, Plaintiff appealed to this Court. (Docs. 17-20). In the second appeal, the Commissioner again stipulated to remand, which this Court ordered on December 1, 2022. (AR 1089-90).

On July 16, 2024, Administrative Law Judge Michael Leppala (hereinafter, "the ALJ" or ALJ Leppala") held a hearing. (AR at 96, 958-85). Plaintiff appeared, and testified, by videoconference at the hearing with attorney representative Laura J. Johnson. (AR at 96, 960-79). Vocational expert Kathleen M. Doehla (the "VE") appeared and testified telephonically. (AR at 96, 960, 979-84). ALJ Leppala issued an unfavorable decision on September 27, 2024. (AR 923-55). The ALJ's decision became the final decision of the Commissioner because the Appeals Council did not assume jurisdiction. *See* 20 C.F.R. §§ 404.984(d), 416.1484(d). On December Plaintiff moved to reopen this case before this Court. *See* (Doc. 39).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it "may neither reweigh the evidence nor substitute [its] judgment for that of the [Commissioner]." *See, e.g.*, *id.* (quotation

omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted); or if it "constitutes mere conclusion[,]" *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." (*Id.* at 1262 (citation omitted)). While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citation omitted), and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." (*Id.* at 1010 (quotation omitted)). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation and citation omitted).

**B. Disability Framework**

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security Act devised a five-step sequential evaluation process to determine disability. *See Barnhart v.*

*Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051–52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the Commissioner will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24; 20 C.F.R. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) she is not engaged in "substantial gainful activity"; (2) she has "a severe medically determinable physical or mental impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) her impairment(s) meets or equals one of the "Listings" of presumptively disabling impairments; or (4) she is unable to perform her "past relevant work." *Id.* § 404.1520(a)(4)(i–iv) (citing *id.* § 404.1509); *Grogan*, 399 F.3d at 1261.

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [she] can still do despite [physical and mental] limitations." *Id.* § 404.1545(a)(1). Second, the ALJ "determine[s] the physical and mental demands of the claimant's past relevant work." *Winfrey*, 92 F.3d at 1023. "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* at 1024 (quoting Social Security Ruling ("SSR") 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id.* at 1023, 1025.

The claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a *prima facie* case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to

show that" the claimant retains sufficient RFC "to perform work in the national economy, given his age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## III. THE ALJ'S DETERMINATION

ALJ Leppala made his decision that Plaintiff was not disabled at step five of the sequential evaluation. (AR at 927, 942). The ALJ determined that Plaintif's earnings record showed she "acquired sufficient quarters of coverage to remain insured through September 30, 2023." (AR at 927). He further concluded that Plaintiff had not engaged in substantial gainful activity since February 12, 2013.[4] ALJ Leppala then found Plaintiff suffered from the following severe physical "impairments: carpal tunnel syndrome; degenerative disc disease of the cervical, lumbar, and thoracic spine; [and] fibromyalgia." (AR at 929). He also concluded that Plaintiff's severe mental impairments included: "headaches; anxiety; borderline intellectual functioning; depression; obsessive compulsive disorder; posttraumatic stress disorder ("PTSD"); and substance use disorder." (AR at 929). As for nonsevere impairments, ALJ Leppala found Plaintiff had "hepatitis C, rib fracture, spleen injury, and obesity." (AR at 929). The ALJ concluded, however, that Plaintiff's impairments—singularly or in combination thereof—did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. (AR at 929-32). Accordingly, ALJ Leppala proceeded to step four and found that Plaintiff had the RFC to"

> . . . perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following limitations. [Plaintiff] is limited to standing and/or walking for about six hours in an eight-hour workday and sitting for about six hours in an eight hour day, all with normal breaks. She is further limited to occasionally climbing

4 ALJ Leppala noted that Plaintiff worked after her DIB application date and the purported onset disability date, but Plaintiff's wage earnings did not rise to the level of substantial gainful activity. (AR at 929).

> ramps or stairs; never climbing ladders, ropes, or scaffolds; and occasionally stooping, crouching, kneeling, and crawling. [Plaintiff] is limited to frequently handling and fingering and to occasional exposure to unprotected heights, dangerous machinery, and moving machinery. [Plaintiff] can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond properly to supervision, coworkers, and work situations, deal with occasional changes in work setting, maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. She is limited to occasional interaction with coworkers and supervisors. [Plaintiff] cannot interact with the general public but can have incidental contact with it during task execution.

(AR at 932-33). ALJ Leppala also determined Plaintiff had no past relevant work, but considering her age, work experience, limited education, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy. (AR at 941). The VE testified that Plaintiff would be able to perform the requirements of representative occupations as: (1) laundry worker, DOT 302.685.010 (unskilled), which is performed at the light exertional level with 21,800 jobs in national economy; (2) cleaner DOT 323.687-014 (unskilled), which is performed at the light exertional level with 223,300 jobs in national economy; and (3) mail clerk (DOT 209687-026 (unskilled), which is performed at the light exertional level with 13,500 jobs in national economy. (AR at 942). The ALJ thus concluded that Plaintiff was not disabled. (AR at 927, 942).

## IV. DISCUSSION

In support of her Motion, Plaintiff argues that she is entitled to remand because: (1) the ALJ improperly picked and chose among the limitations found by the agency's nonexamining psychologists, Susan Daughtery, Ph.D. and Don B. Johnson, Ph.D., to render a "not disabled" finding, (Doc. 48 at 6-10; Doc. 53 at 2-5); (2) ALJ Leppala failed to properly weigh the opinion of consultative psychologist David LaCourt, Ph.D. ("Dr. LaCourt"), (Doc. 48 at 10-18; Doc. 53 at 5-10); and (3) the RFC is not based on substantial evidence because ALJ Leppala erroneously disregarded Plaintiff's complaints of fibromyalgia and headaches from his subjective allegations

analysis. (Doc. 48 at 18-27; Doc. 53 at 10-12). The Commissioner, in response, asserts the ALJ's determination that Plaintiff was not disabled is supported by substantial evidence, legally sound, and discernable. *See* (Doc. 52 at 4-18). Specifically, the Commissioner argues the ALJ reasonably evaluated the opinions of Susan Daughtery, Ph.D., Don B. Johnson, Ph.D., and Dr. LaCourt. (*Id.* at 4-16). Additionally, the Commissioner contends the ALJ reasonably evaluated Plaintiff's subjective complaints and found them inconsistent with the medical evidence and other evidence in the record. (*Id.* at 16-19). For the reasons discussed below, the Court finds that the ALJ erred in his evaluation of Dr. LaCourt's opinions, and on that basis remand is warranted.

**A. Medical Opinion Evidence**

The applicable regulations and case law require an ALJ to consider all medical opinions and discuss the weight assigned to those opinions.[5] *See* 20 C.F.R. §§ 404.1527(c); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[a]n ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional.") (internal citations omitted). Medical opinions must be weighed using the factors set forth in the pertinent regulations, *i.e.*, (1) examining relationship, (2) treatment relationship, (3) supportability,[6] (4)

---

5 The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). However, the previous regulations for evaluating opinion evidence apply to this matter because Plaintiff filed her claims on October 5, 2012 (DIB), and February 12, 2013(SSI). *See* 20 C.F.R. § 416.927.

6 Regarding supportability, the pertinent regulations provide that "[t]he better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions. We will evaluate the degree to which these medical opinions consider all of the pertinent evidence in your claim, including medical opinions of treating and other examining sources." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

consistency,[7] (5) specialization, and (6) other factors. 20 C.F.R. §§ 404.1527(c), 416.927(c).[8] "Not every factor for weighing opinion evidence will apply in every case," SSR 06-03P, 2006 SSR LEXIS 5, *12, 2006 WL 2329939 at *5, and the ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that he ultimately assigns the opinion. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 F. App'x. 880, 884 (10th Cir. 2007) (unpublished). In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 SSR LEXIS 5, 1996 WL 374184, at *7. Further, the Commissioner may not rationalize the ALJ's decision *post hoc*, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

**B. Dr. LaCourt's Medical Findings**

On January 24, 2017, referred by New Mexico Disability Determination Services, Plaintiff presented to Dr. LaCourt for a mental status examination ("MSE") and cognitive testing. (AR at 888-91, 938). As part of the examination, Dr. LaCourt interviewed Plaintiff, reviewed a 2013

---

7 Regarding consistency, the pertinent regulations provide that, "[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

8 *See supra* n.6 stating the new regulations pertaining to an ALJ's evaluation of medical opinions does not apply in this matter. As such, the Court applies 20 C.F.R. §§ 404.1527 and 416.927 to this matter.

psychiatric consultative examination, and administered the Wechsler Adult Intelligence Scale, Fourth Edition. On January 30, 2017, Dr. LaCourt submitted his written psychological evaluation and Medical Source Statement of Ability to do Work-Related Activities (Mental). (AR at 893-95). Dr. LaCourt observed that Plaintiff "arrived as scheduled," wore "appropriate" clothing, "[g]rooming and general personal hygiene were normal with functional posture and gait." (AR at 889). Further, Plaintiff's "[a]ttention was in the low-normal range, with a commensurate, low-normal level of general concentration; there was a mild level of variability of concentration exhibited during" the evaluation. (AR at 889). Plaintiff was also oriented 4x. (AR at 889). Dr. LaCourt noted Plaintiff's memory and recall "were grossly intact as sampled, although she was vague about dates." (AR 889). Plaintiff was able to sequentially place events and recall the ages of her kids. (AR at 889). Dr. LaCourt found it interesting that Plaintiff appeared to avoid "information about ongoing political happenings and" Plaintiff stated she did not know who the elected President of the United States was "despite virtually nonstop news coverage." (AR at 889). He also observed that Plaintiff was cooperative, attempted to answer his questions, "appropriately engaged" with the formal testing, and her adaptive skills included "use of a basic cell phone, care of herself and of her small children and basic math skills." (AR at 889). Plaintiff further reported frequent daily use of medical marijuana, ability "to make simple, out-of-box meals although with problems reading more than very simple directions," but Plaintiff's "'care provider'" makes "meals much of the time." (AR at 889). During the examination, Plaintiff's speech was understandable, her affect "was appropriate for the situation, with a pessimistic and anxious mood," and Plaintiff's "verbal responses were virtually entirely concrete, with little elaboration even on directed follow-up. (AR at 889).

Dr. LaCourt concluded that Plaintiff's adaptive skills were "within the mildly-impaired to

borderline/below average range, varying by domain." (AR at 889). Plaintiff's cognitive testing results demonstrated Full Scale IQ 53 (moderate range of impairment), Verbal Comprehension 61 (borderline/below average range of impairment), Perceptual Reasoning 63 (borderline/below average range of impairment), Working Memory 60 (borderline/below average range of impairment), and Processing Speed 50 (moderate range of impairment). (AR at 890). Dr. LaCourt surmised that Plaintiff's Full Scale IQ score did "not adequately reflect the clinical picture, which is of functioning within the Borderline/below average range, which is also consistent with clinically sampled adaptive functioning." (AR at 890). He diagnosed borderline intellectual functioning, general anxiety disorder, and cannabis use disorder. (AR at 890-91).

In his functional assessment, Dr. LaCourt opined Plaintiff's work-related mental activities required moderate to marked limitations:

**Marked Limitations**:[9]

i. sustained concentration/task persistence, for carrying out instructions associated with task impersistence [*sic*]/slowness of completion; and
ii. social interaction with supervisor associated with slow task completion issues.

**Moderate to Marked Limitations**:

i. understanding and remembering detailed/complex instructions;
ii. interact appropriately with supervisor(s);
iii. respond appropriately to usual work situations and to changes in a routine work setting; and
iv. working without supervision.

**Moderate Limitations**:

i. attending and concentrating;
ii. social interaction with the public and coworkers;
iii. adaptation to changes in the workplace; and
iv. use of public transportation/travel to unfamiliar places associated with being able to keep up a consistent pace/keeping with schedules and timetables.

9 The form Medical Source Statement defines "marked" as a "serious limitation in this area. There is a substantial loss in the ability to effectively function." While "moderate" is defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily." (AR at 893).

(AR at 891, 893). Dr. LaCourt further concluded that Plaintiff had mild limitations in being aware of and reacting appropriately to normal hazards, no limitations with "very short/simple instructions," and Plaintiff could not manage her own benefits because she did "not demonstrate more than a basic elementary-level of math, reading and writing skills at this time . . . ." (AR at 891). In support of his assessment, Dr. LaCourt identified Plaintiff's diagnoses and cognitive test results that correlated to respective limitations for the work-related mental activities. (AR at 893-94). Specifically, Plaintiff's "borderline intellectual functioning with impaired processing speed," her "anxiety disorder (generalized) with associated vacillation when not completely sure of the specific task/assignment," and that she could "function reasonably well with learned rote tasks." (AR at 893-94).

The ALJ gave Dr. LaCourt's opinion "little weight," (AR at 940) (citing generally AR 887-95), explaining that

> [m]oderate to marked limitation were found in multiple areas of functioning. It is partly supported by issues on formal testing but not consistent with the Claimant able to give history and reply with concrete answers. She arrived on time and reported regularly caring for herself and caring for her children. There is no history of psychiatric hospitalization.

(AR at 940).

### C. The ALJ Erred in Analyzing Dr. LaCourt's Opinions

Plaintiff asserts ALJ Leppala committed both legal and factual errors when he rejected[10] Dr. LaCourt's opinions. (Doc. 48 at 12-18). Plaintiff contends the ALJ's assessment is deficient because he: (1) cited only nonmedical evidence in evaluating the consistency factor and disregarded other relevant factors set forth in 20 C.F.R. § 404.1527(c); (2) improperly relied on

10 The according of "little weight" to a medical opinion is functionally equivalent to rejecting that opinion. *See Crowder v. Colvin*, 561 F. App'x 740, 742 (10th Cir. 2014) (citing *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012)). Hence, the Court finds ALJ Leppala rejected Dr. LaCourt's opinion when he gave it "little weight."

isolated treatment notes indicating normal examination findings and failed to consider her mental impairments waxed and waned; and (3) misstated and inappropriately selected probative evidence in support of his own conclusion. (Doc. 48 at 12-18).

An ALJ must, at the very least, provide an explanation that allows the reviewing court to follow his reasoning and communicates how he considered the regulatory factors for a medical source's opinions. *See* 20 C.F.R. §§ 404.1527(c); *see also Langley*, 373 F.3d at 1119. The Commissioner asserts that the ALJ adequately addressed the regulatory factors because he noted Dr. LaCourt was a Ph.D. who conducted a psychological examination and the ALJ reasonably rejected Dr. LaCourt's opinions after finding they were inconsistent with the record as whole. (Doc. 52 at 10-13 (citing AR 889-90, 938, 940)). The Court agrees with the Commissioner that ALJ Leppala recited significant portions of Plaintiff's extensive medical records, including Dr. LaCourt's psychological evaluation and subsequent medical source statement, in the medical history narrative of his decision. (*See* AR at 933 (subjective and nonmedical third party statements), 933-37 (physical medical records), 937-39 (mental medical records), 938-39 (Dr. LaCourt's examination findings). Indeed, this District has affirmed the ALJs where the decision connected the claimants' medical history to the weight given to the medical opinion. *See Liana M.O. v. Bisignano*, No. 2:24-cv-00338-KRS, 2025 U.S. Dist. LEXIS 194695, at *33 (D.N.M. Sep. 30, 2025); *Michele L.B. v. O'Malley*, No. 1:23-cv-33 KRS, 2024 U.S. Dist. LEXIS 33641, at *26-28 (D.N.M. Feb. 26, 2024). The ALJ did not do that here.

In his decision, ALJ Leppala does not contend that Dr. LaCourt's opinions were inconsistent with the record evidence; nor does he identify any specific inconsistencies between Dr. LaCourt's opinion and the record evidence. Instead, the ALJ states Dr. LaCourt's opinion is "partly supported" by Plaintiff's cognitive test results, but is not consistent with Plaintiff's self-

reporting at the MSE conducted by Dr. LaCourt. (AR at 940). This goes to the supportability factor, not consistency. *See* 20 C.F.R. §§ 404.1527(c)(4) ("[g]enerally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion"), 416.927(c)(4).

The Commissioner maintains that the ALJ rejected Dr. LaCourt's opinions because they were inconsistent with the record as a whole. Yet, the ALJ offered no such rationale in the context of his evaluation of Dr. LaCourt's opinions. Although he explained earlier in his decision that Plaintiff exhibited normal mental status findings at non-mental health appointments, (AR at 937-39), he did not offer any normal mental status findings by medical providers, or any other objective medical evidence, in rejecting Dr. LaCourt's opinions. (*See* AR at 940). The Commissioner may not rationalize the ALJ's rejection of Dr. LaCourt's opinions *post hoc* as this Court's review is limited to the four corners of the ALJ's decision. *See Carpenter*, 537 F.3d at 1267. Accordingly, absent a clear basis for rejecting the opinion, the Court cannot meaningfully review the ALJ's decision. *See Salazar v. Kijakazi*, No. 21-0256 KK, 2022 U.S. Dist. LEXIS 214325, at *14-15 (D.N.M. Nov. 29, 2022) (citing *O'Dell v. Colvin*, No. 1:15-CV-00628-CBS, 2016 U.S. Dist. LEXIS 133424, 2016 WL 5395247, at *5 (D. Colo. Sept. 27, 2016) (distinguishing *Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) and holding that the ALJ's recitation of the evidence was insufficient because it did not "make any specific connections" between the evidence and the opinions rejected)).

The ALJ's opinion also fails to explain another conundrum regarding the supportability factor. How can the ALJ *reject*[11] an examining physician medical opinion and simultaneously conclude that the findings are "partly supported" by the cognitive testing? Additionally, which

11 *See supra* n.11.

limitations were "partly supported"? The Commissioner attempts to tie the "partly supported" limitations to Plaintiff's RFC. *See* (Doc. 52 at 11 n.3). However, ALJ Leppala never stated which limitations, if any, he incorporated into Plaintiff's RFC. This *post hoc* argument is thus unpersuasive and improper. The Court is left to wonder whether ALJ Leppala considered Dr. LaCourt's statement that Plaintiff's objective cognitive testing did "not adequately reflect the clinical picture, which is of functioning within the Borderline/below average range." (AR at 890, 938). And, if he did not, how and why did Plaintiff's self-reported and subjective statements at the MSE—*i.e.*, nonmedical evidence—outweigh Dr. LaCourt's opinions—*i.e.*, a medical opinion? In particular, how did Plaintiff's "ability to give history and reply with concrete answers," arriving "on time," and caring for her kids and herself discredit the cognitive testing to such a degree that Dr. LaCourt's opinions were rejected? (AR at 940). These reasons also have little, if any, bearing on whether Plaintiff has moderate to marked limitations in being punctual, completing a normal workday without unreasonable rest periods, accepting and understanding instructions from supervisors, or responding appropriately to changes in the workplace. *See Haga,* 482 F.3d at 1208 (quotations omitted); *see also Casas v. Saul*, No. 19-cv-01154 KRS, 2021 U.S. Dist. LEXIS 6778, *12-13, 2021 WL 107244 (D.N.M. Jan. 12, 2021) ("[MSE] document a clinician's observations of the patient *a particular point of time*.") (citing *McGehee v. Saul*, No. 18-cv-1164 KK, 2019 U.S. Dist. Lexis 202078, 2019 WL 6219507, at 6 (D.N.M. Nov. 21, 2019) (emphasis added). Simply put, Plaintiff's subjective statements and actions during one MSE is an insufficient justification to reject Dr. LaCourt's opinions.

To that end, it is well established that an ALJ may refuse to credit an opinion of an examining medical provider wherein the opinion depends on the claimant's veracity. *Oldham*, 509 at 1257. An ALJ may not, however, reject an examining doctor's opinion simply because the

opinion is based on the claimant's responses. *Thomas v. Barnhart*, 147 F. App'x 755, 760 (10th Cir. 2005). To put it another way, an ALJ may not substitute his judgment for that of a psychiatrist, but an ALJ may consider information unavailable to the psychiatrist that discredits the claimant's subjective statements on which the psychiatrist relied. *Houston v. Colvin*, 180 F. Supp. 3d 877, 888 (D.N.M. 2016).

The evidence ALJ Leppala cites to reject Dr. LaCourt's opinions is the same evidence Dr. LaCourt considered. In other words, Dr. LaCourt took into consideration that Plaintiff arrived on time for the evaluation, her memory and recall were "grossly intact as sampled," Plaintiff's "verbal responses were virtually entirely concrete, with little elaboration even on directed follow-up," and her daily activities. (AR at 888-89). Dr. LaCourt nonetheless found that Plaintiff's mental limitations would likely impact her ability to do work. Therefore, the fact that Plaintiff arrived on time, provided a history, gave "concrete answers," and daily activities does not undermine Dr. LaCourt's medical assessment because he already took it into account. Again, an ALJ may assign a lower weight or reject a consultative examiner's opinions if those opinions, or if the subjective statements upon which they relied, find less support in the objective evidence and are inconsistent with the overall record. *See, e.g.*, 20 C.F.R. § 404.1527(c) (providing that an ALJ weighing medical evidence must consider, among other things, the "supportability" of an opinion and its "consistency" with "the record as a whole"); *Houston*, 180 F. Supp. 3d at 888. As addressed *supra*, that was not done here and the ALJ's failure to do so constitutes legal error. *See Kerwin*, 244 F. App'x. at 884.

**D. Harmful Error Analysis**

The Commissioner is adamant that no legal error occurred because the ALJ reasonably fashioned a "middle ground" RFC and Plaintiff's request is improper because she asks the Court

to reweigh the evidence. (Doc. 52 at 16). The Court disagrees.

In general, the failure to provide adequate reasons for rejecting a medical opinion "involves harmless error if there is no inconsistency between the opinion and the ALJ's assessment of residual functional capacity," because "[i]n that situation, . . . the outcome would have been the same even if the medical opinion had not been rejected." *Lobato v. Kijakazi*, No. 21-207 JB/KK, 2022 U.S. Dist. LEXIS 29456, 2022 WL 500395, at *16 (D.N.M. Feb. 18, 2022) (quoting *Mays v. Colvin*, 739 F.3d 569, 578-79 (10th Cir. 2014)). On the other hand, an error in evaluating a medical source's opinion is not harmless when the ALJ would have assigned a more restrictive RFC and made different findings at steps four and five of the analysis if he had credited rather than rejected a medical source's opinion. *See id.*

In this case, Dr. LaCourt's assessment of Plaintiff's work-related abilities and the ALJ's RFC determination are inconsistent in that the RFC determination fails to account for many of the moderate to marked functional limitations Dr. LaCourt assessed. (*Compare* AR at 932-33, with AR at 889-95). Had the ALJ found Dr. LaCourt's opinions persuasive, instead of rejecting them, he would have assigned Plaintiff a more restrictive RFC, which in turn would have resulted in different findings at steps four and five. The ALJ's failure to adequately explain his rejection of Dr. LaCourt's opinions was, therefore, not harmless. *See, e.g., Clifton*, 79 F.3d at 1009-10. Accordingly, remand is required so that the ALJ may properly evaluate Dr. LaCourt's opinions pursuant to the controlling standards as described herein.

**E. Other Claims**

The Court will remand on this basis without addressing Plaintiff's remaining claims of error because a reevaluation of Dr. LaCourt's opinions may impact the other determinations at issue in this proceeding. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. CONCLUSION

The ALJ erred in his review of Plaintiff's application for DIB and SSI benefits by failing to properly weigh Dr. LaCourt's opinions pursuant to governing legal standards. Accordingly, Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum is **GRANTED**, and the Court remands this case back to the Social Security Administration for proceedings consistent with this opinion.

UNITED STATES DISTRICT JUDGE